# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL POSEY,                  :        CIVIL NO. 1:14-CV-00523
                                :
      **Plaintiff**                :        **(Judge Rambo)**
                                :
  v.                            :
                                :
WARDEN J. E. KRUGER, et al.,    :
                                :
      **Defendants**              :

# M E M O R A N D U M

     Plaintiff Michael Posey, an inmate currently incarcerated at the Federal

Medical Center in Butner, North Carolina ("FMC-Butner"), initiated two actions on

February 21, 2014 and April 23, 2014, respectively,[1] with complaints pursuant to the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 & 2671 *et seq*.  By order dated

June 5, 2014, the two actions were consolidated and Plaintiff's amended complaint

(Doc. 23) is now proceeding under the captioned action, a *Bivens*[2] civil rights action.

In the amended complaint, Plaintiff alleges that deliberate indifference and

---

    [1]  Plaintiff originally filed *Posey v. United States*, Civ. No. 1:14-CV-0523 (M.D. Pa.) in
the United States District Court for the District of Columbia.  On March 19, 2014, the District of
Columbia court transferred the matter to this court.  (*See Posey v. United States*, Civ. No. 1:14-CV-
0523 (M.D. Pa.) (Doc. 5).)

    [2]  *Bivens* actions are the federal counterpart to § 1983 claims brought against state
officials.  *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip
Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)).  "[C]ourts have generally relied upon the
principles developed in the case law applying section 1983 to establish the outer perimeters
of a *Bivens* claim against federal officials."  *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir.
1991).

negligence by Defendants Warden J.E. Krueger and Case Management Coordinator Brandyn Cozza in computing his sentences and parole revocation term caused his confinement at the Federal Correctional Institution at Schuylkill ("FCI-Schuylkill") in Minersville, Pennsylvania, to be extended by one hundred (100) days.  Both Defendants were Bureau of Prisons' ("BOP") employees at FCI-Schuylkill at the time of the amended complaint's allegations.  Plaintiff seeks monetary damages and declaratory relief.

Presently before the court is a motion to dismiss and for summary judgment, filed by Defendants.  (Doc. 32.)  For the reasons set forth below, the motion for summary judgment will be granted in favor of Defendants.  In addition, Plaintiff's motion to stay these proceedings (Doc. 38), previously deferred pending disposition of the motion to dismiss and for summary judgment (*see* Doc. 39), will be deemed moot.

I.    **Background**

A.    **Facts**

In support of the instant motion, Defendants have submitted a statement of material facts.  (Doc. 34.)  Because Plaintiff has failed to file an opposing statement of material facts as required by Middle District Local Rule 56.1, the following facts submitted by Defendants are deemed admitted.

2

The BOP's Designation and Sentence Computation Center ("DSCC") is responsible for computing the sentences imposed by United States District Courts. (*Id*. ¶ 6.)  BOP staff at local institutions do not conduct sentence computations.  (*Id*. ¶ 7.)  Rather, any award of jail credit or application of United States Parole Commission ("USPC") orders contained within USPC Notices of Action are the responsibility of the DSCC.  (*Id*. ¶ 8.)  Thus, the individual Defendants named in this action and located at FCI-Schuylkill did not compute Plaintiff's sentences or the USPC parole revocation term.  (*Id*. ¶ 9.)

The background with respect to Plaintiff's sentence computation is as follows. Initially, Defendants assert that Plaintiff's sentences have been computed in accordance with statutory law, as well as the BOP's Program Statement 5880.33, *District of Columbia Sentence Computation Manual*.  (*Id*. ¶ 10.)  On July 11, 2011, Plaintiff was arrested by local authorities in Arlington County, Virginia, and charged with possession with intent to distribute marijuana (Case No. GC11002467-00) and possession of a controlled substance (Case No. GC11002466-00).  (*Id*. ¶ 11.)  On August 24, 2011, Plaintiff was arrested by local authorities in Fairfax County, Virginia, and charged with possession with intent to manufacture a Schedule I or Schedule II substance (Case No. GC11179472-00) and five (5) counts of sale/provide

resale of a Schedule I or Schedule II substance (Case Nos. GC11179476-00,

GC11179467-00, GC11179460-00, GC11179456-00, and GC11179454-00).

(*Id*. ¶ 12.)  On September 9, 2011, an arrest warrant out of the United States District

Court for the District of Columbia was issued for Plaintiff's arrest based on a

supervised release violation in Plaintiff's federal case, *United States v. Posey*, Case

No. 1:03-CR-00563 (D. D.C.).  (*Id*. ¶ 13.)

On November 14, 2011, the Arlington County charges (Case Nos.

GC11002466-00 and GC11002467-00) were *nolle prosequi*.  (*Id*. ¶ 14.)  As a result,

on November 21, 2011, Plaintiff was taken from the custody of Virginia authorities

by the United States Marshals Service ("USMS") on the September 9, 2011 arrest

warrant.  (*Id*. ¶ 15.)  On November 22, 2011, the USPC issued a parole violation

warrant for Plaintiff for violations of parole from a fifteen (15) year term of

imprisonment imposed by the District of Columbia Superior Court, Case No.

F1175688BC.  (*Id*. ¶ 16.)

On March 12, 2012, Plaintiff was "borrowed" from federal custody by the State

of Virginia, Fairfax County, pursuant to a writ of habeas corpus *ad prosequendum*.

(*Id*. ¶ 17.)  Thereafter, on October 12, 2012, Plaintiff was sentenced in Fairfax

County, Virginia, to a total term of confinement of three (3) years.  (*Id*. ¶ 18.)  The

4

state court further ordered that the 3-year term run concurrent with Plaintiff's federal sentence. (*Id.* ¶ 19.)  After the October 12, 2012 sentencing in state court, Plaintiff was returned to the primary custody of federal authorities on October 23, 2012. (*Id.* ¶ 20.)

On January 16, 2013, Plaintiff was sentenced by the United States District Court for the District of Columbia to a term of imprisonment of twenty (20) months for violations of his supervised release in *Posey*, Case No. 1:03-CR-00563. (*Id.* ¶ 21.) The BOP's DSCC prepared a sentence computation for Plaintiff's 20-month term of imprisonment on January 16, 2013, the date of imposition, which resulted in a projected release date of August 6, 2013, with jail credit in the amount of 327 days. (*Id.* ¶ 22.)

Subsequently, Plaintiff was released on the 20-month term, but remains in federal custody on the execution of the USPC parole violation warrant, with 2,746 days remaining to serve on the previously imposed 15-year sentence. (*Id.* ¶ 23.) However, in August 2013, a review of Plaintiff's sentence computation revealed that jail credit was not applied for ninety-nine (99) days he spent in custody. (*Id.* ¶ 24.) As a result, the BOP re-calculated Plaintiff's 20-month term by applying the additional ninety-nine (99) days of credit, for a total of 426 days of jail credit. (*Id.* ¶

25.)  Even with the re-calculation, Plaintiff remained in federal custody after April 29,

2013, based on the USPC parole violation warrant.  (*Id*. ¶ 26.)

On October 25, 2013, the USPC conducted a hearing in Plaintiff's federal case.

(*Id*. ¶ 27.)  Based on the findings made during the hearing, on December 3, 2013, the

USPC issued a Notice of Action ordering Plaintiff's parole revoked with none of the

time spent on parole credited.  (*Id*. ¶ 28.)  Plaintiff's incarceration was also ordered

continued to its expiration.  (*Id*.)  The BOP's DSCC subsequently prepared a sentence

computation on the USPC's revocation of parole which resulted in a 2,746-day term

of confinement, commencing on August 6, 2013.  (*Id*. ¶ 29.)  Credits for the periods

of July 19, 2010 through July 26, 2010, and April 29, 2013 through August 5, 2013

(result of the re-calculation of Plaintiff's 20-month term), were applied to the 2,746

days.  (*Id*. ¶ 30.)

Based on these calculations, Plaintiff is currently serving the USPC parole

revocation term of imprisonment of 2,746 days.  (*Id*. ¶ 4.)  Plaintiff's projected release

date from his current term is September 16, 2018, via mandatory parole.  (*Id*. ¶ 5.)

In addition to this background, Defendants set forth the following facts with

respect to Plaintiff's confinement at FCI-Schuylkill.  Plaintiff was confined at FCI-

Schuylkill from April 8, 2013 to August 12, 2013.  (*Id*. ¶ 1.)  On August 12, 2013,

Plaintiff was transferred to the Federal Detention Center in Philadelphia,

Pennsylvania, for a USPC hearing.  (*Id*. ¶ 2.)  He was returned to FCI-Schuylkill on

December 9, 2013, and remained there until October 22, 2014, when he was

transferred to FMC-Butner, where he is currently incarcerated.  (*Id*. ¶ 3.)

      Finally, in his amended complaint, Plaintiff also sets forth averments with

respect to his sentencing.  (Doc. 23 at 1-2, ¶¶ 4-9.)  He adds that, once he arrived at

FCI-Schuykill and was given a time computation sheet listing an incorrect release

date, he used the administrative remedy process to attempt to correct the mistake.  (*Id*.

at 2, ¶¶ 10-12.)  In Defendant Krueger's institution-level response, he informed

Plaintiff that his request was forwarded for review by the BOP's DSCC.  (*Id*. at 7.)

Subsequently, Plaintiff appealed that response to the BOP's Regional Director, who

informed Plaintiff that the DSCC was reviewing his sentence computation.  (*Id*. at 9.)

Upon further review, the BOP's Central Office of Administrative Remedy Appeals

informed Plaintiff that he was, in fact, entitled to the credit he sought and, thus, his

sentence computation was adjusted and updated.  (*Id*. at 10.)  In his amended

complaint, Plaintiff claims that, despite receiving this adjustment, he was confined an

additional one hundred (100) days beyond his correct release date.  (*Id*. at ¶ 15.)  He

also claims that, as a result of having to endure this additional time in confinement,

Defendants subjected him to "mental anguish and . . . restless nights close to a nervous breakdown." (*Id*. at 9.)

### B.   Procedural History

After Plaintiff's previously-filed actions were consolidated, *see supra*, and an amended complaint was filed, (Doc. 23), by order dated September 30, 2014, the court directed service of the amended complaint on all Defendants named therein (Doc. 25).  On December 2, 2014, Defendants filed a motion to dismiss and for summary judgment.  (Doc. 32.)  A supporting brief and statement of facts followed on December 16, 2014.  (Doc. 33 & 34.)  Plaintiff has filed a brief in opposition to Defendants' motion.  (Doc. 37.)  Defendants filed a reply brief, (Doc. 40), and, therefore, the instant motion to dismiss and for summary judgment is ripe for disposition.

## II.   Standards of Review

### A.   Motion to Dismiss under Rule 12(b)(1)

Under Rule 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction may be raised at any time.  *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004).  *See also Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742,

750 (3d Cir. 1995) ("Federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte*."). Rule 12(b)(1) challenges are either facial or factual attacks. *Kestelboym v. Chertoff*, 538 F. Supp. 2d 813, 815 (D. N.J. 2008). "A facial attack questions the sufficiency of the pleading," and "[i]n reviewing a facial attack, a trial court accepts the allegations in the complaint as true." *Id*. However, "when a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id*.; *see also Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

In evaluating a Rule 12(b)(1) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. *See also Carpet Group Int'l*, 227 F.3d at 69. "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. The plaintiff has the burden of proving that jurisdiction does in fact exist. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen*, 549 F.2d at

9

891).  In addition, the plaintiff must demonstrate that a controversy existed when the suit was filed and that the controversy continues to exist throughout the litigation. *See Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992).

Generally, a trial court should not allow "its consideration of jurisdiction to spill over into a determination of the merits of the case." *Kestelboym*, 538 F. Supp. 2d at 815 (quoting *Dugan v. Coastal Indus., Inc.*, 96 F. Supp. 2d 481, 483 (E.D. Pa. 2000)).  However, a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) based on the legal insufficiency of a claim "is proper . . . when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).  To be wholly insubstantial and frivolous, a claim must be "so . . . implausible, foreclosed by prior decision of this Court, or otherwise completely devoid of merit as to not involve a federal controversy." *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974).

### B.    <u>Motion for Summary Judgment</u>

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for granting a motion for summary judgment.  Rule 56(a) provides that "[t]he court shall

10

grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A

factual dispute is "material" if it might affect the outcome of the suit under the

applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis

that would allow a reasonable fact-finder to return a verdict for the non-moving party.

*Id*.  When evaluating a motion for summary judgment, a court "must view the facts in

the light most favorable to the non-moving party," and draw all reasonable inferences

in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir.

2005), *cert. denied*, 546 U.S. 1094 (2006).

       The moving party bears the initial burden of demonstrating the absence of a

disputed issue of material fact.  *See Celotex*, 477 U.S. at 324.  "Once the moving

party points to evidence demonstrating no issue of material fact exists, the non-

moving party has the duty to set forth specific facts showing that a genuine issue of

material fact exists and that a reasonable factfinder could rule in its favor." *Azur v.

Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).  The non-moving

party may not simply sit back and rest on the allegations in its complaint; instead, it

11

must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.   <u>Discussion</u>

In the instant motion, Defendants argue that the amended complaint should be dismissed and summary judgment should be granted in their favor on the basis that: (1) Defendants enjoy sovereign immunity for official capacity claims; (2) Defendants lack personal involvement in the alleged constitutional violations and *respondeat superior* cannot form the basis of a *Bivens* claim; (3) Defendants are entitled to

12

qualified immunity;[3] and (4) to the extent the court construes the amended complaint to state a FTCA claim, Plaintiff has not demonstrated that he was harmed by any negligence with regard to his sentence computation.  The court will discuss these arguments in turn.

## A.     <u>Official Capacity</u>

In his amended complaint, Plaintiff states that he is suing Defendants in their individual and official capacities.  (*See* Doc. 23 at 7.)  A federal court is without jurisdiction to entertain a suit for money damages against the United States or its agencies unless sovereign immunity has expressly been waived.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *see also White-Squire v. United States Postal Service*, 592 F.3d 453, 456 (3d Cir. 2010).  Sovereign immunity is not defeated by the act of naming officers and employees of the United States as defendants in a suit that is properly against the United States.  *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.").  Because the United States

_____

[3]  Because the court finds that Defendants had no personal involvement in Plaintiff's sentence computations, the court need not discuss whether Defendants are entitled to qualified immunity.

has not waived sovereign immunity in a *Bivens* suit for monetary damages, *see Mitchell*, 445 U.S. at 538, Plaintiff's official-capacity claims against Defendants for monetary relief will be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## B. Personal Involvement

Defendants contend that summary judgment should be granted in their favor on the basis that they had no personal involvement in the allegations contained in the amended complaint. "In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law." *Azzara v. Scism*, Civ. No. 4:11-CV-1075, 2012 WL 722342, at *2 (M.D. Pa. Mar. 1, 2012) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.2 (1981)); *Mitchell v. Beard*, 492 F. App'x 230, 235 (3d Cir. 2012) (finding that the prisoner's allegations against four of the DOC defendants "that they are liable for improperly supervising those directly responsible for his injuries" were insufficient to state a claim). As explained in *Rode*,

14

> A defendant in a civil rights action must have personal involvement in
> the alleged wrongs . . . . Personal involvement can be shown through
> allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge and
> acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207 (citations omitted).

In the instant case, Plaintiff's amended complaint alleges that Defendants'

deliberate indifference and negligence in failing to correct Plaintiff's sentence

computation in a timely manner caused Plaintiff to be confined for 100 days longer

than what his sentence required.  According to Plaintiff, this additional confinement

caused him mental anguish and restless nights leading to a nervous breakdown.  The

fundamental flaw in Plaintiff's allegations, however, is that the named Defendants do

not, in fact, compute inmate sentences.  Rather, the BOP's DSCC, located in Grand

Prairie, Texas, and not at FCI-Schuylkill, is exclusively responsible for computing

sentences imposed by United States District Courts, as well as computing revocation

orders imposed by the USPC.  As a result, the named Defendants had no personal

involvement in the wrongs alleged in Plaintiff's amended complaint.

Moreover, Plaintiff cannot assert liability against Defendant Krueger due to his

involvement in reviewing request slips or grievances filed by Plaintiff.  First, the

filing of a grievance is not sufficient to show the actual knowledge necessary for

personal involvement.  *Rode*, 845 F.2d at 1208.  Second, mere concurrence in a prison administrative appeal process does not implicate a constitutional concern.  *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983) (holding that administrative review of prison disciplinary hearings is not constitutionally guaranteed and, therefore, plaintiff's claims with respect to the Program Review Committee's decision did not rise to constitutional significance).  While prisoners have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts, which is not compromised by the failure of the prison to address grievances. *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998).  Based on these well-settled principles, the court finds that any response or denial by Defendant Krueger of Plaintiff's requests for administrative remedies concerning his sentence computation is insufficient to establish Defendant Krueger's personal involvement.

Finally, to the extent that Plaintiff has named Defendant Krueger based solely on his position as the former Warden of FCI-Schuylkill, a deliberate indifference claim against Defendant Krueger fails.  As stated above, it is well established that the doctrine of *respondeat superior* cannot form the basis of a *Bivens* claim.  *See, e.g.*, *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Rode*, 845 F.2d at 1207.  More

16

specifically, courts have held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to liability under *Bivens*. *Rode*, 845 F.2d at 1208. Therefore, any such claim against Defendant Krueger here fails.

In sum, based on the court's conclusion that Plaintiff has failed to allege personal involvement on the part of either named Defendant in the wrongs alleged in the amended complaint, summary judgment will be granted in favor of Defendants.

### C.   FTCA Claim

To the extent that the court can construe Plaintiff's amended complaint to state a claim under the FTCA, Defendants contend that Plaintiff has not established the elements of such a claim. The court notes, initially, that the only proper defendant in an FTCA suit is the United States itself and, therefore, any such claim asserted by Plaintiff here against the named Defendants fails. 28 U.S.C. § 2671, *et seq*.; *Schrob v. Catterson*, 967 F.2d 929, 934 (3d Cir. 1992) (stating that a federal employee or agency, acting within the scope of his or her employment, enjoys absolute immunity from state law tort claims, and the exclusive remedy for his or her wrongful or negligent act is a suit against the United States under the FTCA).

Even should Plaintiff's amended complaint be construed to state a claim under the FTCA, the court agrees with Defendants that the claim fails. "The FTCA 'was designed to primarily remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)). Federal district courts have jurisdiction over civil actions against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstance where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). A person may sue under the FTCA to recover damages from the United States for personal injuries sustained during confinement in a federal prison by reason of the negligence of a government employee. *United States v. Muniz*, 374 U.S. 150 (1963).

A federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. 28 U.S.C. § 1346(b) (1996); *Toole v. United States*, 588 F.2d 403, 406 (3d Cir. 1978);

18

*O'Neal v. Dep't of Army*, 852 F. Supp. 327, 334-35 (M.D. Pa. 1994); *Turner v. Miller*, 679 F. Supp. 441, 443 (M.D. Pa. 1987).  Thus, in Pennsylvania, "[t]o establish a cause of action in negligence, the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998).  However, in cases such as this which involve federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence.  *See* 18 U.S.C. § 4042; *Turner*, 679 F. Supp. at 443.

Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence. *Baum v. United States*, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982).  Furthermore, Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury.  *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978).

In the instant case, the record reflects that the BOP's DSCC corrected a ninety-nine (99) day error to Plaintiff's sentence computation by crediting those days towards the parole revocation sentence he is currently serving.[4]  As a result, Plaintiff

---

[4] In his brief in opposition to the instant motion, Plaintiff takes no issue with the one (1) day discrepancy of ninety-nine (99) days stated by Defendants versus one hundred (100) days asserted by Plaintiff.  (*See* Doc. 37.)

19

was never denied a release from incarceration.  Instead, his current sentence was

credited with the additional days Plaintiff sought to have credited.  Therefore,

Plaintiff has not demonstrated that any breach of duty on the part of the United States

caused Plaintiff's injury.


**IV.**    **Conclusion**

For the reasons set forth herein, the motion for summary judgment (Doc. 32)

will be granted in favor of Defendants.  In addition, Plaintiff's motion to stay these

proceedings (Doc. 38) will be deemed moot.

An appropriate order will issue.



S/Sylvia H. Rambo
United States District Judge



Dated: May 18, 2015.